Final case for argument this morning is 18-1316, ADC Telecommunications v. United States. Okay, I think we're ready. Good morning. Good morning, your honors. Good morning. Good morning. Pleased to court. I'm Michael Rohl from Pisani and Rohl on behalf of the appellant ADC. Why is this a test case? Is it for purposes of identifying whether the criteria, whatever we're going to call it, factor criteria or whatever, including the vision part of it, applies? So this case was designated as a test case below, just under normal CIT procedure that every shipment has its own sort of life, if you will. The entry of liquidates has to be protested, taken to the CIT. How many do you have? We have 16, either 15 plus this or 16 plus this, but roughly 16. Oh, I see. Okay. And then there's another parallel case that we're not counsel on called the FKD or FDK, which the judge below stayed proceedings in that case because we have a common legal issue pending this. So the first thing we wanted to address was I think it's hopefully the easiest issue in the case, which is the applicability of 85-17. I know that sort of begs the question because we're here to talk about is it 90-13 or 85-17. And it fits 90-13. If we think it fits in 90-13, we don't reach the issue, right? Correct, but I wanted to address the 85-17 issue because the judge... Well, before we do that, since you're on that, if we determine that 90-13 covers the subject merchandised, would you agree that 90-13, 80-90 would be the appropriate subheading for the other? Yeah, I would like that. Yes, I would agree. That would be the outcome. And note 1M to section 16 if you felt the chapter 90 provision, specifically the provision you referenced, was the correct one, that would end the inquiry because of note 1M to section 16. We would agree with that as well. I mentioned that too because in the court below, there's reference to us engaging in some kind of specificity argument saying, well, both sort of described it. We were trying to argue that 85-17 was more specific. We made no such argument below. The point is we have to decide, is it the chapter 90? And if it's not, which is our contention, then it goes in 85-17. But there was reference also in the red brief that we never really made our case for 85-17 in any event. So if you felt that it didn't go in 90-13, that we didn't make the case, I was going... You've got a short period of time, so why don't I... We'll turn to the chapter 90 provision. Yeah, which is the major issue. And Celestere in particular, which involves a different heading than the one we're dealing with here, which was 90-14 as opposed to 90-13. So in some sense, it seems to me the question we're dealing with is whether similar language in two separate headings can have different meanings because we're bound by the meaning that Celestere gave to the optical instrument language in that context, but it wasn't dealing with the same heading that we're dealing with here. But the operative language is the same. That is correct. Right, so the question is whether different language in different headings, the same language in different headings can have different meanings depending on the context. And the earlier decision in Alta, whatever the name of it is, seems to suggest that maybe that could be true. So isn't that the crux of what we're dealing with here? I mean, I would say factually it is correct that it is a different provision, 90-13 in this case, versus Celestere 90-15. That is factually correct. But I don't think that distinction should make a difference. What about this distinction? In Ataka and in Celestere, we identified three criteria relevant to determining whether an imported product is an optical instrument. But it's pretty clear from Ataka and Celestere following it, you don't have to apply all three. You don't have to satisfy all three criteria, do you? I don't read those cases that way. In other words, the Celestere case says you have to satisfy all three criteria. The long line of cases— Well, what do you understand the sentence in Ataka, none of the foregoing criteria is determinative in every case. What does that mean? If it doesn't mean that, what does it mean? Well, there was language that dicta—first of all, it was dicta in Ataka. And I think the struggle over the years in developing criteria to determine what does it mean to be an optical instrument started back in the tariff studies back in the 1920s. And it sort of changed. Originally, the criteria was chief use or predominant use. Then that morphed over time. So I think the court with that statement was trying to say that for purposes of figuring out whether something's an optical instrument, we have to look at not just those criteria but also common sense. There was this element of common sense that came into it as well. But the fact that— Celestere was a sextant. Correct. That involved actually aiding the user to look through the sextant, correct? Yes. So there is a substantial difference between that and the devices which act on light here, is there not? But this idea of we have different tariff provisions at issue, so that should make a difference. The idea that there's a sextant and this is something that's nothing like a sextant, that that should make a difference. All of the cases involving optical instruments involve different cases and different tariff provisions. Yet the common thread throughout all of them are those three criteria, four criteria under the old Enges case and the predecessor tariff schedule. So the fact that the merchandise that the judge below said is different here and that should make a difference, it means Celestere doesn't apply. I think, at least in my view, there's a difference between saying under a particular heading we go article by article and we might apply different tests to those articles. It seems to me it's a little strange. In other words, if you're under one heading, it seems to me you've got to apply the same test to all the articles under the heading. But Ataka may be suggesting that similar language in different headings may, depending on the context, have different meanings. For example, in 9013, you have this reference to lasers, which might suggest that aiding human vision is not part of what's necessary in an optical instrument. Do you understand what I'm saying? Yes, but heading 9013 covers – there's also discussion in the red brief about the AO nominee issues that are going on there. The lasers and the other things in the semicolons in 9013 are different categories of goods. So just because a laser might be infrared and therefore not subject to human vision, that doesn't mean that for everything in that heading, the same criteria applies. The semicolons are important in the heading. But is it your theory that identical language referring to optical instruments can't have different scope depending on the heading and the context? I mean, for predictability purposes and uniformity of the customs laws, the fact that the phrase optical instrument is found in this heading and it's found in this heading and in another place in the tariff, the meaning shouldn't change based upon which heading it falls in unless there's a good reason for it. So let's say, for example, Selaster doesn't apply. At the end of this, the court concludes it's a different heading, 9015. We've got a clean slate here. To me, the question still becomes – 9013. 9013. Yeah. What should the rule be for 9013? Let's look at that for a minute. The explanatory notes to Chapter 90 state that from headings 9004 through 9012, we have all things that are for aiding or enhancing human vision, specifically what the exact language is. A wide group comprising not only simple optical elements of heading 9001 and 9002, but also – this is referencing what the chapter covers – optical instruments and apparatus ranging from spectacles of heading 9004 to more complex instruments using astronomy, photography, cinematography, or microscopic observations. The common thread in all that is human vision, things that you can see. So even if we say Selaster doesn't apply, we have to have a new rule from this case as to what 9013 optical instrument means. It seems to me from the context of the statute, the meaning should be something about aiding or enhancing human vision. I think that's correct. As opposed to affecting light. Correct. Because affecting light is just optics. We've conceded in our brief that all of these items have optical elements in them. But clearly just because you have an optical element in your product doesn't mean that everything with an optical element is an optical instrument. I think that's a really important point. And the cases throughout the years, the American metal case that was discussed quite a bit in the red brief, makes very clear that just because you have an optical something in your product doesn't mean you're optical. The additional US Note 3 to Chapter 90 that's referenced for what the term optical instrument means, it's not setting forth a definition. It's setting forth just a necessary condition. So I think you'd still have to define for purposes of 9013, well, what are we going to mean here? What does optical instrument mean? Put Selaster aside, even though I don't think that would be correct. But if that was your decision, you have to look to me at the context of the statute. And all those things are about human vision. More importantly, the explanatory note. Again, Note 3, which explains the term optimal appliance and optimal instruments, refers only to those appliances and instruments which incorporate one or more optical elements. And then we go to dictionaries. Dictionaries define optical as of or relating to optics. And there's a long analysis you can go through in the dictionary definitions, which take you out the other end as a science that deals with light. It's genesis and propagation. And if you go down that road, you lose, don't you? Yes, but then I think the short answer is yes. I would lose if you're going to just stick with that definition. But I would say that wouldn't be correct for the court to do. Why? Because you also have to. Because of Selaster. No, no, no, no. Even before putting Selaster aside, I'm going to concede. I mean, I'm not conceding Selaster. Assuming you are too into putting Selaster to the side, you would still have to say, all right, is that definition too broad, for example? Because what's going to get picked up in that broad definition? I'm going to have things in the tariff schedule. For example, in Section 16, which is where we contend things go, there's plenty of tariff provisions that talk about optical. An optical disc, an optical disc reader, like a DVD player or a CBD reader. Those are all these optical elements. Are we now going to say, based on that broad definition, those all go in Chapter 90, specifically 90.13 as an other optical instrument? You would have to if that was your decision. It would gut all of Section 16 and anything having to do with optical. Because the importer would say, I have an optical disc reader here. Wow, it's described specifically in Heading 85 such and such. But this court's decision, ADC, which said no, optical means such and such, an optical instrument. Because that's what you would have defined, Note 3, the Chapter 90. Pulls me out of Section 16 and pops me down into Chapter 90. Again, you could define it that way. And if you did, I would arguably lose. But as a matter of policy, I would say that's too broad of a definition. You have to look at the context. All throughout Section 16, there's sprinkling, if you will, of optical. But what you're describing, your parade of horrors, is subsidiary purposes. I would argue that's, I mean, it would be a case for another day. But an optical disc reader, I would respectfully submit, the optical element within your CD player is really not the subsidiary purpose. I mean, you cannot read a disc without that. It is how the thing works. Again, that's a different case for a different day. But I suppose that would, the tension would be, and I suppose the escape hatch, you would suggest, as a counterpoint to what I argued, would be that. But I think it would wreak a lot of havoc in the customs bar and in practice. The Section 16 provisions are... Correct. But going back here to this point here, again, I would look at, we're trying to resolve, we have optical in both Sections 16, plenty of references. We have optical in Chapter 90. I understand it's your job to figure out, in this case, where to draw that line. But the rule cannot simply be, you have an optical element, there's some optical characteristic to this, therefore, on those dictionary definitions, you go in Chapter 90. Again, when the drafters of the HCS put that together, there's plenty of reference in our provision, 8517, multiplexers. This case involves a multiplexer. The explanatory notes, 8517, specifically say it covers multiplexers. The explanatory notes, heading 8517, talk about optical wave instruments go in there. So to say just because it's optical and has an element, it goes in Chapter 90, I think, would be a gross disservice. Okay, you're well into your rebuttal. Why don't we get from the other side? Thank you. Good morning, guidance for the United States. I'm here with Paul Smith, U.S. Customs and Border Protection. May I please record? The parties do not dispute that the merchandise meets all of those statutory requirements for classification in Heading 90.13. There is no dispute that the merchandise meets the statutory definition of an optical instrument under additional U.S. Note 3 to Chapter 90. There is no dispute that the merchandise contains one or more optical elements. In fact, ADC just conceded that. There is also no dispute that those optical elements are used solely for viewing, are not used solely for viewing a scale or for some other subsidiary purpose. ADC's argument here... Can I just take you to the question I have? And that's, I know we have an alternative argument about if solitaire doesn't apply. But let me ask you, under the reading you're proposing, we have said these are the four factors or three factors you have to use, but they're not necessarily determinative in every case. That leads you... What does that mean? When we have criteria, this isn't a totality of circumstances in a lot of our tests that we have in patent law where you look at the various facts and you decide which exists and which are going to be. If you have a factor or criteria, whatever you call it, that says the optical system must aid in human vision, ya-da-da, does that say that in one case the court, CIT or us, will say, well, it doesn't aid in human vision, but it's still okay? And in another case we'll say, yes, it does aid... I mean, how do you... Either you've got a criteria, either it applies, or how do you say it applies sometimes so you reach different conflicting results in similar cases? I think that's... I understand your concern, Your Honor. These are factors which should be considered under the Selastare factors, and we know that... And there's overlap between them. That's one way you know that there's factors. The first factor is whether the device acts or interacts with light. The second one is whether the device permits or enhances human vision. Well, something that permits or enhances human vision is by definition going to interact with light. Yeah, but I guess I have the same question that Judge Probst does. What are we supposed to do with that language? Does that mean, for example, that with respect to hitting 9014, which was involved in Selastare, that we sort of make an article-by-article determination and weigh these factors? Or does everything in optical instrument in 9014 have to aid human vision, which is what Selastare seems to say? Well, as you pointed out, Your Honor, in 9014, the heading at issue there was navigational instruments, and so the sextant at issue was clearly a navigational instrument. But do you agree that you can't start weighing these factors to determine whether a particular instrument falls under 9014? I think it may be possible that under navigational instruments, under heading 9014, the permitting or enhancing human vision criteria or factor may weigh more heavily. Weigh more heavily, or it's determinative in every case? I believe it's not determinative in every case, Your Honor. So different articles under 9014 could be within the article or not within the article, even though some don't aid in human vision? Well, so there's a Selastare case, and before they have a TACA, and there's a direct line of cases going back to this discussion that optical instruments generally deal with light or human vision or both. And so there's not a requirement that it do both. Wait, so you're saying the criteria has always been one. But what about if you have similar goods? I mean, you're not saying that somebody... It's not determinative. So the CIT, we put out a test, and we say, these are the four factors, but one is not necessarily determinative. So you can have goods under, let's stick with 9013 now. You can have certain goods, a judge saying, it's not determinative, therefore I don't have to necessarily apply this criteria, and another judge saying, it's not determinative, but I want to apply this criteria. Judges make those types of determinations all the time based on the facts in front of them. When you have various factors to be considered, in certain types of instruments or certain... It would say in certain types of instruments, someone would say that it has to aid in human vision. There may be... But in other goods, somebody is free to say, no, we don't care whether it aids in human vision. Right? Is that what you're saying? Your Honor, I mean, we have three criteria here that Celestere tells us to evaluate, and ITACA says none of these, not any one of these criteria are determinative. So it's not just this criteria at issue as to whether it permits or enhances human vision. Well, that can mean something else, right? Not all of these are necessarily determinative because... I mean, couldn't that mean something else, that there were other factors or other things going on, so obviously these factors aren't going to be determinative, something else is going to be determinative? That's a kind of nebulous statement, isn't it? None of these is necessarily determinative, or whatever the words are that we used. Well, two of those criteria are statutory. So those... As to whether it has optical elements and whether those optical elements must not be used for a subsidiary purpose or for viewing a scale. So you read that to say, with respect to some goods and some heading, it is determinative whether or not it aids in human vision. But in another case, it might not be. A pair of plain glass glasses used for children's play acting, where they pretend that they're wearing glasses, would have an optical element, that is to say they're plain glass, which allows the light through. But they're not intended for use in human vision, and the court could say that weighs more heavily in this instance. Your Honor, so that optical element must do more than just allow the passage of light. They must modify or change the light in some way. So in your example of just plain lenses that do nothing to the light, that would not be sufficient. Here, it's undisputed that the optical elements in these instruments do manipulate the light. Does that answer your question? No. I'm sorry? No, I was just throwing out a hypothetical where there would be things that clearly don't fall within aiding human vision and yet have some optical element. That permits human vision. Yes, Your Honor. But your statement is they'd still be outside 1913 and 1914 because they don't change the light. That's right, Your Honor. I can't speak for a certain... They're rose-colored glasses. If Your Honor has no further questions... Are there other tariff provisions where we've framed a test in this court for whether an object is within the tariff provision where there's a weighing of different factors? I mean, I know there's essential character and subsidiary purpose and those kinds of things, but is there another example where we're weighing different criteria to determine whether it's under the tariff? I believe there are, Your Honor. I apologize that I can't think of an example at this time. I feel like that's... ADC argues that 1913 isn't an EO nominee provision because it doesn't name a specific article of commerce. Yes, Your Honor. Have we held similarly specific provisions to be EO nominee? I think here... So we have certain provisions that are clearly EO nominee. The other optical appliances and instruments, Your Honor, the government would agree that those are... It's a descriptive provision and it doesn't appear to name a specific kind of good and it's more of a descriptive provision. I don't think that changes the outcome here, but I would agree with that. Have you identified any common or commercial dictionaries defining the term optical appliances or optical instruments as a whole? No, I don't believe so, Your Honor. We submitted definitions of optical elements and that was what we found in McGraw-Hill's scientific and technical terms. And then we have definitions of instruments and appliances in general from the Trump case. And I don't believe that the parties disputed that these qualified as instruments and appliances. Thank you. Thank you, Your Honor. Just a few points to carry on, I think was one of the first questions, which is what did that phrase in Ataka mean about those factors not being determinative in every case? I guess my last comment on that issue would be, again, we cited and the government cited this long line of cases involving the phrase optical instruments. Ataka is the only case that has that reference in there. It's under the prior tariff schedule, the TUSIS. Yes, it's a fairly recent pronouncement from the predecessor court on optical instruments. But to me, the overwhelming weight of authority from the appeals court, I know the trial opinions are of less influence and less relevance here. But for 100 years, the human aid or enhanced human vision has been a criteria. I don't read the cases and I think a fair reading is all the cases have that element. So whatever that phrase means about it not being determinative, those factors in every case, seems an aberration. The only case we have here under the HTSUS, the cellist there, I suppose you could distinguish it and say that's a different heading. But the language is the same, as I said earlier, I don't think that should change the result from heading to heading unless there's a reason in the context of the headings. Are there other tariff provisions where there's sort of a weighing of different factors aside from the examples, the more general examples that I gave? I cannot think of any. I mean, the difference, I guess, short answer is no, I cannot think of any. Essential character, which you referenced earlier, is a little more, I can use the technical phrase, loosey-goosey because it allows the judge to say, no, the value is the most important thing or the weight or whatever those criterias are and there's not a set definition. But cellist there, criteria, is nothing like essential character and I cannot think of another provision that has a multi-factor test that's judicially created. There are certainly ones, for example, computers that go in heading 8471. The tariff might lay out, you have to meet this, this, and this criteria, but that's statutory. I assume I'm out of time or over my time. But my point last on cellist there is just simply, cellist there says the criteria is A, B, and C and you meet it or you don't. And to me, principles of society size should carry that to this case as well. And with that. Thank you. Thank you for your time. That concludes our proceeding. All rise. Your report is adjourned until tomorrow morning. It's an o'clock a.m.